GRASSY CREEK NEIGHBORHOOD ALLIANCE, INC. and JACK LoCICERO, Plaintiffs
    v. CITY OF WINSTON-SALEM, NORTH CAROLINA MUNICIPAL LEASING
    CORPORATION, THE WINSTON-SALEM/FORSYTH COUNTY UTILITY COMMIS-
    SION, Defendants

No. COA00-280

(Filed 20 February 2001)

1. Zoning— rezoning land for use as sanitary landfill—
   approval and selection prior to effective date of statute

   The trial court did not err by granting summary judgment in favor of defendants on plaintiffs' challenge of the city's rezoning and development of two tracts of city-owned land for use as a sanitary landfill even though defendants failed to comply with N.C.G.S. § 160A-325 because the actions of the Aldermen were sufficient to constitute a selection or approval of the site for land-

fill expansion prior to the effective date of N.C.G.S. § 160A-325 of 22 July 1992.

## 2. Zoning— rezoning land for use as sanitary landfill—compliance with one condition okay for exemption

The trial court did not err by granting summary judgment in favor of defendants on plaintiffs' challenge of the city's rezoning and development of two tracts of city-owned land for use as a sanitary landfill when defendants complied with only one condition of the exemption enacted with N.C.G.S. § 160A-325 because compliance with either condition compels exemption.

Appeal by plaintiffs from grant of summary judgment in favor of defendants by the Honorable Larry G. Ford on 30 November 1999. Heard in the Court of Appeals 23 January 2001.

*Blanco, Tackabery, Combs, & Matamoros, P.A., by Reginald F. Combs, Bowen C. Houff, and Jeffrey D. Patton, for Plaintiffs-Appellants.*

*Winston-Salem City Attorney's Office, by Ronald G. Seeber and Charles C. Green, Jr.; and Womble, Carlyle, Sandridge, & Rice, PLLC, by Roddey M. Ligon, Jr. and Gusti W. Frankel, for Defendants-Appellees.*

TYSON, Judge.

Plaintiffs challenge Winston-Salem's rezoning and development of two tracts of city-owned land ("Property") for use as a sanitary landfill. Plaintiff, Grassy Creek Alliance, Inc. ("Alliance"), is an incorporated, nonprofit association of property owners living in the vicinity of the Property. Plaintiff, Joseph LoCicero ("LoCicero"), is a member of the Alliance and owns property in the vicinity of the Property.

### Winston-Salem/Forsyth County Utility Commission

N.C.G.S. § 160A-461 allows "any unit of local government" to enter into a contract or agreement with any one or more units of local government "to execute any undertaking." Water, sewer, and solid waste management are authorized undertakings of local governments. N.C.G.S. § 160A-311 (2), (3), (6). N.C.G.S. § 160A-462(a) allows units of local government to create "joint agencies" to carry out their joint undertaking:

Units agreeing to an undertaking may establish a joint agency charged with any or all of the responsibility for the undertaking. The units may confer on the joint agency any power, duty, right, or function needed for the execution of the undertaking . . .

On 20 April 1976, the City of Winston-Salem ("City") and Forsyth County ("County") entered into an agreement, pursuant to N.C.G.S. § 160A-462, consolidating their previously separate water and sewer systems ("Agreement"). The Agreement created the Winston-Salem/Forsyth County Utility Commission ("Utility Commission"), a joint agency comprised of members appointed by the City Board of Aldermen ("Aldermen") and the County Commission. The Agreement provides:

The Utility Commission shall be the policy making board for all water and sewerage facilities operated by the City, having the same authority and responsibility as the City or the County to fix rates, charges and assessments, and to provide for improvements and extensions to such facilities . . .

On 3 May 1990, the City and County amended the Agreement and added solid waste management to the Utility Commission's areas of responsibility. The 1990 Amendment provides:

The Commission will provide solid waste management and disposal, and through a ranked course of action, a source reduction and recycling program. Solid Waste Management and Disposal shall include, but not be limited to composting, landfilling and all other measures necessary to comply with all requirements of G.S. 130A as amended and other applicable state and federal laws and regulations . . .

Except as expressly stated herein to the contrary, the 1976 Agreement between the parties shall remain in full force and effect with regard to water and sewer service, and shall apply to solid waste disposal service.

The interlocal agreement, amended in 1990, provides that solid waste management be operated by the Utility Commission. This authority includes providing for "improvements and extensions to such facilities." The interlocal agreement provides "the Utility Commission shall have no authority to issue bonds or to incur any debt without prior approval of the Winston-Salem Board of Alderman."

GRASSY CREEK NEIGHBORHOOD ALLIANCE, INC. v. CITY OF WINSTON-SALEM

[142 N.C. App. 290 (2001)]

### Selection or Approval of the Landfill Expansion Site

On 12 August 1991, the Utility Commission recommended approval of the acquisition of eight parcels of land ("Tract I"), to be used for the expansion of the existing Hanes Mill Road Landfill ("Landfill"). On 9 September 1991, the Finance Committee of the Aldermen recommended approval of a financing-lease agreement ("lease") for Tract I. Under the terms of the lease, defendant, North Carolina Municipal Leasing Corporation ("NCMLC"), would purchase and lease Tract I to the City. Tract I would be conveyed to the City upon payment of the full purchase price. On 16 September 1991, the Aldermen approved the lease.

The City paid the debt incurred by NCMLC to purchase the Property. On 29 April 1999, NCMLC conveyed the Property to the City.

Consolidated Foods Corporation donated an adjoining tract of land ("Tract II") to the City in 1983. The Aldermen accepted Tract II for sanitary landfill purposes by resolution adopted 3 October 1983.

On 7 June 1999, the City rezoned Tracts I and II for use as a landfill. The Alliance and LoCicero contend that the defendants violated N.C.G.S. § 160A-325 and are entitled to summary judgment.

### Issues

The first issue presented by this appeal is whether the Aldermen selected or approved the property for use as expansion of the landfill prior to the effective date of N.C.G.S. § 160A-325, exempting defendants' actions pursuant to Session Laws 1991 (Reg. Sess., 1992), c. 1013, s.9 ("exemption"), and excusing defendants from compliance with N.C.G.S. § 160A-325. The second issue is whether the city was required to meet all the applicable conditions of the exemption, or whether compliance with one condition was sufficient. We hold that the Aldermen did select or approve the site for landfill expansion prior to the effective date of N.C.G.S. § 160A-325, and affirm summary judgment in favor of defendants.

### Selection or approval by the Aldermen

[1] Locations of solid waste landfills are controversial and impact nearby property owners. N.C.G.S. § 160A-325, effective 22 July 1992, establishes certain prerequisites which must be satisfied prior to the selection or approval of certain landfill sites.

**§ 160A-325. Selection or approval of sites for certain sanitary landfills; solid waste defined.**

(a) The governing board of a city shall consider alternative sites and socioeconomic and demographic data and shall hold a public hearing prior to selecting or approving a site for a new sanitary landfill that receives residential solid waste that is located within one mile of an existing sanitary landfill within the State. The distance between an existing and a proposed site shall be determined by measurement between the closest points on the outer boundary of each site. The definitions set out in G.S. § 160A-390 apply to this subsection:

(1) "Approving a site" refers to prior approval of a site under G.S. §130A-294(a)(4).

(2) "Existing sanitary landfill" means a sanitary landfill that is in operation or that has been in operation within the five year period immediately prior to the date on which an application for a permit is submitted.

(3) "New sanitary landfill" means a sanitary landfill that includes areas not within the legal description of an existing sanitary landfill as set out in the permit for the existing sanitary landfill . . .

It is uncontested that the expansion of the landfill constitutes a "new sanitary landfill" under N.C.G.S. § 160A-325, since rezoning the property was required prior to its use as a landfill. The parties stipulate that defendants have not met the requirements of N.C.G.S. § 160A-325 in selecting or approving the Property as a landfill. Defendants argue that they are excused from compliance because of an exemption enacted with N.C.G.S. § 160A-325, which provides in pertinent part:

. . . G.S. § 160A-325 . . . shall not apply to the selection **or** approval of a site for a new sanitary landfill if, prior to the effective date of this statute [July 22, 1992]:

(1) The site was selected **or** approved by the board of commissioners of a county **or** the governing board of a city;

(2) A public hearing on the selection **or** approval of the site has been held;

(3) A long-term contract was approved by the Department of Environment, Health, and Natural Resources under Part 4 of Article 15 of Chapter 153A of the General Statutes; **or**

(4) An application for a permit for a sanitary landfill to be located on the site has been submitted to the Department of Environment, Health and Natural Resources. (emphasis supplied)

Session Laws 1991 (Reg. Sess., 1992), c.1013, s.9.

Defendants contend that the actions of the Aldermen constituted selection or approval of the landfill expansion site, and that such selection or approval occurred prior to 22 July 1992, the effective date of N.C.G.S. § 160A-325. We agree.

On 12 August 1991, the Utility Commission unanimously approved a resolution to expand the landfill. The resolution stated that Tract I was to be used as an "addition to Hanes Mill Road Landfill." The resolution also created access restrictions and buffer requirements for the site. Tract I was identified by tax lots and block numbers. The Utility Commission stated that the approximate price of the landfill expansion would be $3,915,000.00, based on acreage price and subject to final survey. The Utility Commission further resolved that the City should undertake to acquire Tract I for the amount recommended by the Finance Committee and the Assistant City Manager for Public Works.

On 9 September 1991, the Finance Committee of the Aldermen voted to approve a resolution entitled "RESOLUTION OF THE CITY OF WINSTON-SALEM; NORTH CAROLINA APPROVING THE LEASE AGREEMENT WITH NORTH CAROLINA MUNICIPAL LEASING CORPORATION AND RELATED MATTERS." The transcript of the Finance Committee meeting indicates the lease included "$3.9 million to acquire 325 acres for landfill, solid waste disposal, land." The Finance Committee attached a "Board of Aldermen-Action Request Form" to the resolution stating that the lease was, in part, for the acquisition of "land for future solid waste disposal."

On 16 September 1991, this Resolution and Action-Request Form was brought before the Aldermen, which approved the Resolution. The Resolution stated that

the Mayor, the City Manager, the City Secretary, and the Director of Finance of the City are hereby authorized, empowered and directed to do any and all other acts and to execute any and all other documents, which they in their discretion, deem necessary and appropriate in order to consummate the transactions contemplated by (I) this Resolution, (ii) the Lease, and (iii) the documents presented to this meeting . . .

On 9 October 1991, the City, as lessee, entered into a lease with NCMLC, as lessor. The property description in the lease identified "Land—Solid Waste disposal" with a price of "$3,900,000.00" as part of the leased property. It is undisputed that this was the only landfill agenda item before the City in 1991. In October and December 1991, NCMLC acquired title to the site.

Plaintiffs contend that the Aldermen did not sufficiently identify the property. Based on these sequence of events, and after a thorough review of the record, we hold that the land referred to in the Resolution, Action Request form, transcripts of the proceedings, lease, and deed is Tract I.

Plaintiffs argue that the Utility Commission selected the landfill expansion site, hence the selection was not by the "governing board of the city" as required by N.C.G.S. § 160A-325. Plaintiffs contend that the Legislature specifically intended that such decisions could only be made by the "governing board of the city," which is stipulated to be the Aldermen.

Subsection (1) of the exemption unambiguously states that the site must have been "selected **or** approved by the governing board of a city." Session Laws 1991 (Reg. Sess., 1992), c.1013, s.9 (emphasis supplied). If the Alderman selected **or** approved the landfill site prior to 22 July 1992, defendants complied with the first requirement of the exemption. "Where a statute contains two clauses which prescribe its applicability, and the clauses are connected by a disjunctive (e.g. 'or'), the application of the statute is not limited to cases falling within both clauses, but will apply to cases falling within either of them." *Davis v. N.C. Granite*, 259 N.C. 672, 675, 131 S.E.2d 335, 337 (1963).

We hold that the actions of the Aldermen were sufficient to constitute a selection or approval of the landfill expansion site by that body on 16 September 1991. The selection or approval occurred prior to 22 July 1992, the effective date of N.C.G.S. § 160A-325. Condition (1) of the exemption found in Session Laws 1991 (Reg. Sess., 1992), c.1013, s.9 applies and has been met.

### Requirements of the Exemption

[2] The second issue is whether defendants were required to comply with all applicable sections of the exemption. The exemption provides that the city or county need not comply with the requirements of N.C.G.S. § 160A-325, if prior to the effective date of 22 July 1992:

(1) The site was selected **or** approved by the board of commissioners of a county **or** the governing board of a city;

(2) A public hearing on the selection **or** approval of the site has been held;

(3) A long-term contract was approved by the Department of Environment, Health, and Natural Resources under Part 4 of Article 15 of Chapter 153A of the General Statutes; **or**

(4) An application for a permit for a sanitary landfill to be located on the site has been submitted to the Department of Environment, Health and Natural Resources. (emphasis supplied)

This identical exemption applies to both N.C.G.S. § 160A-325 and § 153A-136. N.C.G.S. § 153A-136 and N.C.G.S. § 160A-325 were adopted in the same Senate bill. N.C.G.S. § 153A-136 contains the identical requirements for landfill expansion sites in counties which N.C.G.S. § 160A-325 requires for municipalities.

A statute's words should be given their natural and ordinary meaning, *Hyler v. GTE Products Co.*, 333 N.C. 258, 425 S.E.2d 698 (1993), and need not be interpreted when they speak for themselves. *Abeyounis v. Town of Wrightsville Beach*, 102 N.C. App. 341, 401 S.E.2d 847 (1991). Where a statute contains two clauses which prescribe its applicability and clauses are connected by the disjunctive "or", application of the statute is not limited to cases falling within both clauses but applies to cases falling within either one of them. *Davis,* supra; *Patrick v. Beatty*, 202 N.C. 454, 163 S.E.2d 572 (1932). "In its elementary sense the word "or", as used in a statute, is a disjunctive particle indicating that the various members of the sentence are to be taken separately . . . When in the enumeration of persons or things in a statute, the conjunction is placed immediately before the last of the series, the same connective is understood between the previous members." 73 Am.Jur. 2d, *Statutes* § 241 (1974).

In *Smith v. Bumgarner*, 115 N.C. App. 149, 443 S.E.2d 744 (1994), our Court interpreted a statute which listed persons who may bring an action to determine paternity. In that statute, the persons who may bring such an action were specifically enumerated in the statute and separated by commas and the word "or." *Id.* This Court held that the "provision is not ambiguous and its natural and ordinary meaning indicates that either of the listed persons may bring an action." *Id.* at 152, 443 S.E.2d at 746.

Here, the statutory scheme is the same as in *Bumgarner*. The defendants met the requirements of subsection (1) of the exemption. Since compliance with either condition compels exemption, we need not address whether any of the other three subsections of the exemption were met.

No genuine issue of material fact exists. Therefore summary judgment in favor of defendants is

Affirmed.

Judges GREENE and HORTON concur.

Judge HORTON concurred in this opinion prior to 8 February 2001.