CAROLINA POWER & LIGHT COMPANY v. THE CITY OF ASHEVILLE

No. 631A03

(Filed 25 June 2004)

**Cities and Towns—annexation—combination of adjacency to municipality and to areas developed for urban purposes**

The trial court erred in an annexation case by affirming defendant city's annexation ordinance 2708 regarding the pertinent non-urban or undeveloped parcels, because: (1) the plain meaning of N.C.G.S. § 160A-48(d)(2) states that there must be a combination of adjacency to the municipality and adjacency to areas developed for urban purposes; and (2) the proposed annexation as to Non-Urban Areas 1 and 4 is invalid since those areas do not qualify under (d)(2) for inclusion with developed areas which meet the Urban Use/Subdivision Test in N.C.G.S. § 160A-48(c) when no part of those two areas are adjacent to the city limits.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 161 N.C. App. 1, 587 S.E.2d 490 (2003), affirming a judgment entered 18 February 2002 by Judge Zoro J. Guice, Jr. in Superior Court, Buncombe County. Heard in the Supreme Court 13 April 2004.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A. by Larry S. McDevitt and Craig D. Justus, for plaintiff-appellant.*

*Robert W. Oast, Jr. and William F. Slawter for defendant-appellee.*

LAKE, Chief Justice.

This case concerns legislative policy and procedure as it relates to undeveloped land desired to be annexed by a municipal governing board, pursuant to N.C.G.S. § 160A-48 which defines the "character" of an area to be annexed. Specifically, the issue before this Court on appeal is the proper interpretation of the exception set forth in N.C.G.S. § 160A-48(d)(2) as it relates to areas of land that are not developed for urban purposes, an issue of first impression for this Court. The Court of Appeals' majority opinion concluded that the language of this subsection of the statute allows for annexation of the non-urban or undeveloped parcels at issue because the parcels, on at least sixty percent of their external boundary, are adjacent to areas which are developed for urban purposes. Because we conclude that this is not what the statutory language proposes and intends, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the trial court.

On 22 February 2000, the City of Asheville ("the City") adopted a resolution of intent to annex approximately 1,500 acres in the Long Shoals Area, including properties owned by Carolina Power & Light Company ("CP&L"). This acreage was being utilized in a variety of ways. The largest single property and use within the entire area is the steam-generated electrical power plant owned and operated by CP&L. This property includes the power plant, Lake Julian, and other associated facilities.

An annexation services plan ("ASP") depicting the boundaries of the Long Shoals Area to be annexed was approved by the City on 15 March 2000. The ASP purported to qualify the Long Shoals Area under one of the five available standards or tests specified in N.C.G.S. § 160A-48 for determining whether an area is "developed for urban purposes," which test is set forth in subsection (c)(3) and is known as the "Urban Use/Subdivision Test." This test, in essence, provides that an area *is* developed for urban purposes if at least sixty percent of the total number of lots in the area are used for residential, commercial, industrial, institutional, or governmental purposes and is subdivided into lots such that at least sixty percent of the total

acreage of the area, not counting that used for commercial, industrial, governmental, or institutional purposes, consists of lots three acres or less in size. N.C.G.S. § 160A-48(c)(3) (2003).

Richard Cowick, a consultant from Benchmark, Inc., was hired by the City to classify the character of the property to be annexed. Cowick reported that 101 out of 134 lots or tracts in the Long Shoals Area, or 75.37 percent, were actively used for residential, commercial, industrial, institutional, or governmental purposes. Cowick and the City also reported that only 114.06 acres in the Long Shoals Area were undeveloped areas or developed areas being used for residential purposes. Of that total, it was contended that 72.17 acres, or 63.27 percent of the undeveloped or residential areas, consisted of lots or tracts three acres or less in size, thus bringing the Long Shoals Area within the standards set forth in N.C.G.S. § 160A-48(c)(3).

In its ASP, the City classified 288.21 acres out of the 1,500 acres of the Long Shoals Area as "non-urban," or not developed for urban purposes. The City excluded this acreage from the subdivision test calculations. These 288.21 acres are separated into five, noncontiguous tracts denominated as Non-Urban Areas 1 through 5. The external boundaries for Non-Urban Area 1 and Non-Urban Area 4, consisting of 122.75 acres and 66.51 acres respectively, are not adjacent to the City's existing municipal boundary line.

On 23 May 2000, a public hearing was held concerning the annexation of the Long Shoals Area. On 13 June 2000, the City adopted Ordinance 2708, which purported to annex the Long Shoals Area, including the CP&L property, effective 1 July 2001. With the adoption of the ordinance, the City modified some of the calculations for the Urban Use/Subdivision Test referenced in its ASP, determining that 63.08 percent of the total acreage of lots undeveloped and lots used for residential purposes consisted of lots or tracts three acres or less in size. The City did not modify any of its prior determinations from the ASP for Non-Urban Area 1 and Non-Urban Area 4. Within Non-Urban Area 1, there is a farm of over thirty acres that is not contiguous to the existing city limits which the City unsuccessfully attempted to classify as urban and annex in a prior case. *See Asheville Indus., Inc. v. City of Asheville*, 112 N.C. App. 713, 436 S.E.2d 873 (1993).

On 11 August 2000, CP&L filed a petition for review in Superior Court, Buncombe County, challenging the City's adoption of

Ordinance 2708. CP&L contended that the City erroneously characterized as "Non-Urban," under N.C.G.S. § 160A-48(d)(2), the residential or vacant properties in Non-Urban Area 1, including the farm, and in Non-Urban Area 4, as those areas are not adjacent to the existing municipal boundary line as required by the statute. With such characterization, CP&L argued that the City erroneously excluded that acreage from the Subdivision Test in N.C.G.S. § 160A-48(c)(3), resulting in a false percentage of at least sixty percent, which ostensibly met the Subdivision Test requirements.

At trial, the parties stipulated that a 4.4-acre tract owned by the Meece family was incorrectly listed as commercial and should have been classified as a residential lot larger than three acres in size. The effect of this reclassification on the Subdivision Test was to decrease to 60.71 percent the percentage of undeveloped lots or those used for residential purposes consisting of lots or tracts three acres or less in size.

The trial court affirmed the City's Annexation Ordinance 2708. CP&L appealed the decision to the North Carolina Court of Appeals. The Court of Appeals' majority opinion affirmed the trial court's ruling, with Judge Tyson dissenting on the issue of the City's compliance with N.C.G.S. § 160A-48(d)(2) as it related to Non-Urban Area 1 and Non-Urban Area 4. CP&L appealed that decision to this Court as a matter of right, based upon the dissenting opinion. For the following reasons, we reverse the decision of the Court of Appeals.

Involuntary annexation is by its nature a harsh exercise of governmental power affecting private property and so is properly restrained and balanced by legislative policy and mandated standards and procedure. Annexation is initiated upon the decision of a municipal governing board to extend the municipal corporate limits, and upon challenge by a property owner, the extent and implementation of this decision must comply with legislative intent. The declaration of state policy for annexation by municipalities having a population of 5,000 or more persons, as set forth in N.C.G.S. § 160A-45, specifies that annexation should be done in accordance with uniform legislative standards to provide "governmental services essential for sound urban development and for the protection of health, safety and welfare in areas being *intensively used* for residential, commercial, industrial, institutional and governmental purposes or in areas undergoing such development." N.C.G.S. § 160A-45(2) (2003) (emphasis added).

In N.C.G.S. § 160A-48, the General Assembly has carefully speci-fied the standards which must be met in order for any area to be annexed, so as to prevent municipalities from extending their bound-aries arbitrarily or without due regard for the policy, reasons, and standards mandated by the legislature. Subsection (a) of this statute states that a municipality may extend its corporate limits "to include any area (1) [w]hich meets the general standards of subsection (b), and (2) *[e]very part of which* meets the requirements of either sub-section (c) or subsection (d)." N.C.G.S. § 160A-48(a)(1), (2) (2003) (emphasis added). Subsection (b) of this statute begins by stating that: "The total area to be annexed *must meet the following stand-ards*:", and subsection (c) of this statute begins by stating: "Part or all of the area to be annexed *must be developed* for urban purposes." N.C.G.S. § 160A-48(b), (c) (2003) (emphasis added). For purposes of this case on appeal, the general standards of subsection (b) are not relevant, and our focus is solely upon subsection (c)(3), the Urban Use/Subdivision Test to determine an area developed for urban purposes, and subsection (d)(2), the exception provision for includ-ing in the area to be annexed an undeveloped area if it meets the con-ditions specified therein.

Areas that do not meet the test of subsection (c)(3) of section 160A-48 are by implication "non-urban areas" or areas not developed for urban purposes. These areas are still subject to annexation if they meet the requirements of subsection (d). The purpose of subsection (d) is "to permit municipal governing boards to extend corporate lim-its to include all nearby areas developed for urban purposes and where necessary to include areas which at the time of annexation are not yet developed for urban purposes but which constitute necessary land connections between the municipality and areas developed for urban purposes or between two or more areas developed for urban purposes." N.C.G.S. § 160A-48(d) (2003). The specific wording of sub-section (d), and more narrowly, (d)(2) is at the heart of this case. Subsection (d) states in part:

> (d)  In addition to areas developed for urban purposes, a gov-erning board may include in the area to be annexed any area which does not meet the requirements of subsection (c) if such area either:
>
>> (1)  Lies between the municipal boundary and an area devel-oped for urban purposes so that the area developed for urban purposes is either not adjacent to the municipal

boundary or cannot be served by the municipality without extending services and/or water and/or sewer lines through such sparsely developed area; or

(2) Is adjacent, on at least sixty percent (60%) of its external boundary, to any combination of the municipal boundary and the boundary of an area or areas developed for urban purposes as defined in subsection (c).

N.C.G.S. § 160A-48(d)(1), (2).

This Court has held that "[j]udicial review of an annexation ordinance is limited to determination of whether the annexation proceedings substantially comply with the requirements of the applicable annexation statute." *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 40, 265 S.E.2d 123, 135 (1980). On appeal, this Court is bound by the facts found by the trial court if supported by the evidence. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980). Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal. *Id.*

The issue before this Court in the instant appeal is a question of law, the proper interpretation of N.C.G.S. § 160A-48(d)(2), specifically whether the wording "any combination" will allow use of only one boundary in the equation, either the "municipal boundary" or the boundary of an area "developed for urban purposes." As stipulated by the parties, no part of the City's Non-Urban Area 1 or Non-Urban Area 4 is adjacent to the city limits. The Court of Appeals' majority opinion concluded that the language of the statute allowed for annexation of the non-urban parcels at issue because the parcels are adjacent, on at least sixty percent of their external boundary, exclusively to areas developed for urban purposes. The majority reasoned that "any combination" could include a situation where the parcel abuts an area developed for urban purposes but not a municipal boundary.

The Court of Appeals in its majority opinion stated:

[T]he plain language of the statute includes all possible combinations which make the following equation work: the amount of border which the non-urban area shares with the municipality *combined with* the amount of border [which] the non-urban area shares with an area or areas developed for urban purposes *equals* sixty percent of the border of the non-urban area. One

workable combination exists where a non-urban area touches, on at least sixty percent of its external border, *only* an area or areas developed for urban purposes.

*Carolina Power & Light Co. v. City of Asheville,* 161 N.C. App. 1, 10, 587 S.E.2d 490, 496 (2003).

"The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute." *Stevenson v. City of Durham,* 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972). The foremost task in statutory interpretation is " 'to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise.' " *Spruill v. Lake Phelps Vol. Fire Dep't, Inc.,* 351 N.C. 318, 320, 523 S.E.2d 672, 674 (2000) (quoting *Turlington v. McLeod,* 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988)). Where the statutory language is clear and unambiguous, "the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." *Fowler v. Valencourt,* 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993). If the language is ambiguous or unclear, the reviewing court must construe the statute in an attempt not to "defeat or impair the object of the statute . . . if that can reasonably be done without doing violence to the legislative language." *North Carolina Baptist Hosp., Inc. v. Mitchell,* 323 N.C. 528, 532, 374 S.E.2d 844, 846 (1988).

The crux of the statutory language in question is focused upon the phrase, "to any combination of the municipal boundary and the boundary of an area or areas developed for urban purposes as defined in subsection (c)." N.C.G.S. § 160A-48(d)(2). In considering this wording, little ambiguity presents itself facially. "Combination" is defined as the "[c]ombined state or condition of two or more things." *The Oxford English Dictionary,* Vol. II, 647 (1961). "Combine" is defined as "[t]o couple or join two or more things together" or "[t]o unite . . . or exhibit in union." *Id.* at 648.

In defining areas not developed for urban purposes that nevertheless may be annexed, subsection (d)(2) clearly specifies a combination of two things, in "any" variation or quantities of these two entities: the municipal boundary and the boundary of the urban developed area. To totally exclude one entity in this equation, the boundary with the municipality, fails to yield a true "combination." The Court of Appeals' majority opinion appears to rest upon the premise, in theory at least, that a quantity or value of zero is

computable and can, as the statute requires, unite with something else. This approach ignores the ordinary meaning of the words of the statute and imposes a theoretically strained interpretation and application.

The interpretation of the Court of Appeals' majority is not bolstered by the fact that the General Assembly chose "any" as the adjective to precede "combination." "Any" refers to the kind of "combination," which must by definition "unite" or "combine" two things. Thus, "any" does not affect the meaning of "combination." That the combination must join areas adjacent to a municipality and areas adjacent to urban developed areas is emphasized by the use of the conjunctive term "and" within the statute. *Cf. Grassy Creek Neighborhood Alliance, Inc. v. City of Winston-Salem*, 142 N.C. App. 290, 297-98, 542 S.E.2d 296, 301 (2001) (stating that the natural and ordinary meaning of the disjunctive "or" permits compliance with either condition).

While there is no prior state case law precisely on point in construing this language, previous cases examining N.C.G.S. § 160A-48(d)(2) are instructive. In the case of *In re Annexation Ordinance Adopted by the City of Jacksonville*, 255 N.C. 633, 122 S.E.2d 690 (1961), this Court addressed the issue of what area might qualify as "non-urban" or "not developed for urban purposes but subject to annexation due to its properties." The petitioner in that case contended that the tract of land to be annexed was not sufficiently urbanized. This Court noted that although the tract was undeveloped, its acreage qualified under a predecessor statute to N.C.G.S. § 160A-48(d)(2). This Court stated in upholding the annexation that "[a] casual examination of the annexation map shows that more than 60% of the external boundary of the 15.5 acre tract is *adjacent to the city limits* and the Forest Hills Development." *Id.* at 643, 122 S.E.2d at 698 (emphasis added).

Similarly, in *In re Annexation Ordinance Adopted by the City of Albemarle*, 300 N.C. 337, 266 S.E.2d 661 (1980), this Court stated that: "Cities with 5,000 or more people may annex an outlying urban area pursuant to G.S. 160A-48(c) and the intervening undeveloped lands pursuant to G.S. 160A-48(d) so long as the entire area meets the requirements of G.S. 160A-48(b)." *Id.* at 341, 266 S.E.2d at 663. In the instant case, the non-urban areas are not "intervening undeveloped lands" between the City and the urban area proposed for annexation as stated by this Court in *Albemarle*.

The Court of Appeals has analyzed N.C.G.S. § 160A-48(d)(2) several times since *Albemarle*. In all of those cases, the proposed non-urban areas were adjacent to their respective existing municipal boundaries. *Chapel Hill Country Club, Inc. v. Town of Chapel Hill*, 97 N.C. App. 171, 388 S.E.2d 168, *disc. rev. denied*, 326 N.C. 481, 392 S.E.2d 87 (1990); *Wallace v. Town of Chapel Hill*, 93 N.C. App. 422, 378 S.E.2d 225 (1989); *Southern Glove Mfg. Co. v. City of Newton*, 75 N.C. App. 574, 331 S.E.2d 180, *disc. rev. denied*, 314 N.C. 669, 336 S.E.2d 401 (1985); *The Little Red School House, Ltd. v. City of Greensboro*, 71 N.C. App. 332, 322 S.E.2d 195 (1984), *appeal dismissed and disc. rev. denied*, 313 N.C. 514, 329 S.E.2d 392 (1985).

In *The Little Red School House*, petitioners challenged a proposed annexation on the ground that the subdivided land did not meet the requirements of N.C.G.S. §§ 160A-48(c) and 160A-48(d). 71 N.C. App. at 337-38, 322 S.E.2d at 198. The Court of Appeals upheld the trial court's finding of fact that although one of the subareas did not meet the requirements of N.C.G.S. § 160A-48(c), the area fully complied with the requirements of N.C.G.S. § 160A-48(d), by "having 74.9% of its external boundary adjacent to the boundaries of the municipality and subareas [developed for urban purposes as defined in N.C.G.S. § 160A-48(c)]." *Id.* at 338, 322 S.E.2d at 198.

In *Southern Glove*, petitioners argued that annexation by the City of Newton was not authorized by statute because the undeveloped areas were not "necessary land connections" under N.C.G.S. § 160A-48(d)(2), and that the word "necessary" within the purpose section following the numbered paragraphs in (d) acted as a limitation on the criteria set forth in those numbered paragraphs. 75 N.C. App. at 578, 331 S.E.2d at 183. The Court of Appeals affirmed the trial court's decision that the adjoining undeveloped tracts qualified under subsection (d)(2) for annexation. *Id.* The city did not need to prove that a land connection was "necessary" so long as it met the adjacency standards in subsection (d)(2). *Id.* "We believe the sub-area allowed by G.S. 160A-48(d)(2) is one of those described by the unnumbered paragraph as a 'necessary land connection.' If we were to hold otherwise[,] we believe we would not be following the words of the statute." *Id.*

In *Wallace*, the Town of Chapel Hill planned to annex three urbanized areas meeting the requirements of subsection (c) and one area which did not meet the requirements of subsection (c), thereby being designated as "non-urban." 93 N.C. App. at 423, 378 S.E.2d at 226.

Despite petitioners' argument to overturn *Southern Glove*, the Court of Appeals held that "[t]he Town presented evidence that the non-urban property met the criteria of (d)(2) in that the non-urban property was adjacent on at least sixty percent of its external boundary to a *combination* of the Town's boundary *and* the boundary of the area developed for urban purposes." *Id.* at 430, 378 S.E.2d at 230 (emphasis added).

In the year following the decision in *Wallace*, the Court of Appeals addressed the language in the purpose section, which follows part (2) of N.C.G.S. § 160A-48(d), in *Chapel Hill Country Club*. There the Court of Appeals reiterated that a municipality may annex a non-urban property if it meets the criteria either of (d)(1) or (d)(2) without regard to language within the purpose section following those parts. 97 N.C. App. at 179-80, 388 S.E.2d at 173.

Further, the legislative purpose behind N.C.G.S. § 160A-48(d) and public policy favor an interpretation giving effect to the plain meaning of the words "and" and "combination." Subsection (d) was created to allow municipalities the opportunity to extend their services to reach urban core areas without being thwarted by "intervening undeveloped land." *In re Annexation Ordinance Adopted by the City of Albemarle*, 300 N.C. at 341-42, 266 S.E.2d at 663-64. These intervening undeveloped lands connect the municipality and the areas developed for urban purposes, making them important and must-have areas for annexation. Nonintervening, non-urban areas do not serve that same purpose, and annexation of such areas is not essential to extending services. If those areas do not meet the requirement of (d)(2), there is no basis for their annexation.

This Court has cited the legislative history of annexation laws as demonstrating that the legislative standard should " 'act as a brake. only with respect to attempted annexation of large tracts of agricultural or vacant land where no evidence of urban development can be shown.' " *Lithium Corp. of America, Inc. v. Town of Bessemer City*, 261 N.C. 532, 537, 135 S.E.2d 574, 578 (1964) (quoting North Carolina General Assembly, *Supplementary Report of the Municipal Government Study Commission*, p. 11 (1959)). Furthermore, in 1998 the General Assembly amended the annexation statutes in numerous ways, including limiting the scope of a city's authority to annex undeveloped acreage by: (1) reducing the acreage that would otherwise qualify as being subdivided for urban purposes under N.C.G.S. § 160A-48(c)(3) from a maximum of five acres to three acres

or less in size; (2) amending N.C.G.S. § 160A-48(d) to place a twenty-five percent cap on the amount of property a city can classify as a non-urban "necessary land connection"; and (3) stating that a reviewing court will no longer be required to accept a city's estimates of population and degree of land subdivision for purposes of meeting the requirements of N.C.G.S. § 160A-48 if "the actual population, total area, or degree of land subdivision falls below the standards" set in that statute. Act of Sept. 22, 1998, ch. 150, secs. 14, 19, 1997 N.C. Sess. Laws (2d Sess. 1998) 432, 446-48, 456-57. These steps evidence the General Assembly's desire to limit or restrict rather than facilitate annexation.

Because the plain meaning of N.C.G.S. § 160A-48(d)(2) states that there must be a "combination" of adjacency to the municipality *and* adjacency to areas developed for urban purposes, the proposed annexation as to Non-Urban Areas 1 and 4 is invalid. Those areas do not qualify under (d)(2) for inclusion with developed areas which meet the Urban Use/Subdivision Test in N.C.G.S. § 160A-48(c). This interpretation is in accordance with the intent of the General Assembly and case history.

CP&L contends that the effect of including Non-Urban Areas 1 and 4 under subsection (c) rather than (d)(2) is to decrease the percentage for the Urban Use/Subdivision Test to under sixty percent, thereby invalidating the entire annexation as outlined in the ASP. As this issue was not raised in the dissent, we decline to address it but note its importance on remand.

The decision of the Court of Appeals is reversed, and this case is remanded to that court for further remand to the trial court for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.