IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-205

No. COA21-357

Filed 5 April 2022

Property Tax Commission, Nos. 20 PTC 0239, 20 PTC 0240, 20 PTC 0241

IN THE MATTER OF THE APPEALS OF:

POP Capitol Towers, LP,

P&L Coliseum Residential Developer, LLC,

P&L Coliseum, LP.

Appeal by Taxpayers from orders of dismissal entered 28 January 2021 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 15 December 2021.

*The Hillis Firm LLC, by Lindsey Walker Hillis, for Taxpayers-Appellants.*

*Ruff Bond Cobb Wade & Bethune, LLP, by Ronald L. Gibson and Robert S. Adden, Jr., for Appellee Mecklenburg County.*

JACKSON, Judge.

¶ 1        POP Capitol Towers, LP ("POP"), P&L Coliseum Residential Developer, LLC ("P&L Developer"), and P&L Coliseum, LP ("P&L") (collectively "Taxpayers") argue that their notices of appeal to the Property Tax Commission (the "Commission") were timely because (1) the notices of decision were not properly mailed in compliance with N.C. Gen. Stat. § 105-290(e), and (2) emergency COVID-19 orders issued by our Supreme Court and the Office of Administrative Hearings ("OAH") extended the

filing deadlines for their notices of appeal. After careful review, we reject Taxpayers' arguments and affirm the Commission's orders of dismissal.

## I. Background

¶ 2 This case deals with three property tax appeals from the Mecklenburg County Board of Equalization and Review (the "Board") to the Commission. In 2019, Taxpayers each received property valuations from the Commission, which they disputed. Thereafter, Taxpayers appealed the valuations to the Board.

¶ 3 On 28 February 2020, a Notice of Decision by the Board, dated 2 March 2020, was mailed to each Taxpayer at their respective addresses. The notices of decision were mailed by South Data, a private company contracted by the Mecklenburg County Assessor's Office for mailing services. On 30 March 2020, Taxpayers mailed a Notice of Appeal and Application for Hearing for each property to the Commission, the Mecklenburg County Assessors' Office, and the Mecklenburg County's attorney. The notices of appeal were mailed through the United States Postal Service, but the envelopes containing the notices were not postmarked. The appeals were received and filed with the Commission on 6 April 2020.

¶ 4 On 8 April 2020, the Commission mailed an acknowledgment of the appeals to the Taxpayers, stating that the appeals were untimely and assigning the following case numbers: 20 PTC 239 for appellant POP, 20 PTC 240 for appellant P&L Developer, and 20 PTC 241 for appellant P&L. On 9 September 2020, Mecklenburg

County (the "County") filed and served a Motion to Dismiss the Taxpayers' appeals in each case. The motions to dismiss attached an affidavit of B. Mallard, Project Manager for South Data.

In her affidavit, Ms. Mallard stated that (1) part of her job was to oversee mailings from the County, (2) she personally reviewed the files for mailing, including the Board's notices of decision to the Taxpayers in these cases, and (3) the Board's notices of decision dated 2 March 2020 were mailed on 28 February 2020.

On 25 November 2020, Taxpayers filed responses in opposition to the County's motions to dismiss. Taxpayers asserted, *inter alia*, that (1) the Board failed to properly mail the notices in compliance with N.C. Gen. Stat. § 105-290(e), and (2) their appeals were timely filed under the emergency COVID-19 orders issued by the Supreme Court of North Carolina.

The motions were heard before the Commission on 9 December 2020. After receiving arguments from the parties' counsel, the Commission granted the County's motions to dismiss the appeals. On 28 January 2021, the Commission entered an Order of Dismissal for each appeal.

The Commission made the following findings of fact for each Taxpayer:

> 2. . . . the Board mailed notice of its decision to the Appellant by letter dated March 2, 2020. The Appellant contends that the Board did not actually mail notice of its decision to the Appellant, because the Board contracted with a third party vendor to provide mailing services in

connection with its notice of decision. While we do not find this argument to be persuasive, we note that there is no dispute that the notice was actually received by the appellant, and we note further that the notice of appeal filed with the Commission is marked as signed by the Appellant's attorney on March 30, 2020. Accordingly, we find that the Board's notice of decision was mailed by letter dated March 2, 2020.

3. April 1, 2020 is thirty days after March 2, 2020.

4. On April 6, 2020, the Property Tax Commission received a notice of appeal filed by the Appellant, appealing the Board's decision.

5. The Appellant's notice of appeal was submitted to the Property Tax Commission by United States mail, but the envelope containing the notice was not postmarked.

¶ 9 The Commission also made the following conclusions of law:

2. Because the Board mailed its notice of decision to the property owner by letter dated March 2, 2020, N.C. Gen. Stat. § 105-290(e) requires a notice of appeal from said decision to have been filed with the Commission by April 1, 2020.

3. . . . While orders issuing from the Supreme Court and from the Chief Justice clearly apply to the various divisions of the General Court of Justice, the Commission is an administrative agency, and not a part of the State's court system. Therefore, such orders are inapplicable to the deadlines created by the General Assembly for the administrative process of appeals before the Commission.

. . .

5. . . . Even if we were to assume that the appeal was mailed on March 30, 2020, the statute defines the date of filing as the earlier of the date actually received or the date

postmarked by the United States Postal Service. Without a postmark, the date of mailing is irrelevant.

6.     Because the notice of appeal was submitted by United States mail; was received in the office of the Commission on April 6, 2020; and did not bear a postmark stamped by the United States Postal Service, the appeal is considered filed on April 6, 2020.

. . .

8.     Because the Appellant did not perfect the appeal from the Board within the time required by the statute, the Commission has no jurisdiction to hear the Appellant's appeal.

Taxpayers timely filed their notices of appeal to this Court in each case. Because the appeals are based on the same facts and issues of law, the parties have agreed to consolidate the three appeals before this Court.

## II.   Analysis

### A. Standard of Review

We review decisions of the Commission pursuant to N.C.G.S. § 105-345.2. Questions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the Commission.

*In re Greens of Pine Glen LP*, 356 N.C. 642, 646-47, 576 S.E.2d 316, 319 (2003) (citations omitted). Here, the issues advanced by Taxpayers are questions of law and therefore receive *de novo* review by this Court.

**B. "Time Limit for Appeals" to the Board under N.C. Gen. Stat. § 105-290(e)**

¶ 11        North Carolina General Statute § 105-290(e) requires a notice of appeal to be filed with the Commission "within 30 days after the date the board mailed a notice of its decision to the property owner." N.C. Gen. Stat. § 105-290(e) (2021).

> A notice of appeal submitted to the Property Tax Commission by United States mail is considered to be filed on the date shown on the postmark stamped by the United States Postal Service. If an appeal submitted by United States mail is not postmarked or the postmark does not show the date of mailing, the appeal is considered to be filed on the date it is received in the office of the Commission. A property owner who files an appeal with the Commission has the burden of proving that the appeal is timely.

*Id.* § 105-290(g). Here, it is undisputed that the Taxpayers' notices of appeal were not postmarked by the United States Postal Service and were not delivered to the Commission until after the 30-day window had passed.

¶ 12        We previously dealt with this postmarking issue in *In re Appeal of Bass Income Fund,* where we held that "a notice of appeal submitted to the Commission via the Postal Service, but which does not bear a postmark *stamped by the Service,* is considered filed only upon receipt by the Commission." 115 N.C. App. 703, 705, 446 S.E.2d 594, 596 (1994) (emphasis in original). This Court acknowledged that "it is our duty to apply legislation as written, whatever our opinion may be as to its efficacy or as to the hardship it may impose in individual cases." *Id.* at 706, 246 S.E.2d at

596. *See also In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E. 2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

Here, it is undisputed that the Taxpayers received the Board's notices of decision, which were mailed by letter dated 2 March 2020. Therefore, § 105-290(e) requires that Taxpayers must have filed notice of appeal by 1 April 2020, which is 30 days after the notices of decision were mailed, for their appeals to be timely. Although the notices of appeal were apparently signed and mailed by Taxpayers on 30 March 2020, the Commission did not actually receive the Taxpayers' notices of appeal until 6 April 2020. Because the notices of appeal were "not postmarked or the postmark does not show the date of mailing, the appeal is considered to be filed on the date it is received in the office of the Commission[,]" N.C. Gen. Stat. § 105-290(g), which in this case is 6 April 2020, beyond the 30-day statutory window.

Taxpayers, however, advance two arguments[1] that their notices of appeals

---

[1] We note that Taxpayers also briefly argue that "there is no evidence the [Board] ever mailed the decision to the property owner[,]" and dispute the admission of Ms. Mallard's affidavit, which they claim does not meet the business records exception for hearsay. Putting aside any information from the affidavit, it is undisputed that the Taxpayers actually received the Board's notices of decision, which were dated 2 March 2020. Therefore, even assuming the affidavit was inadmissible, any error from the Commission here would be harmless given that the notices themselves, which are signed and acknowledged by Taxpayers' attorney in their notices of appeal on 30 March 2020, prove the decisions were issued and received.

were timely: (1) the Board's notices of decision were not properly mailed in compliance with § 105-290(e); and (2) emergency COVID-19 orders issued by our Supreme Court and the OAH extended the filing deadlines for their notices of appeal. We carefully review and reject both arguments.

**C. Mailing the Notices of Decision under § 105-290(e)**

¶ 15        Here, there is no dispute that the Taxpayers actually received the Board's notices of decision, and that the Board actually issued the notices of decision. The only dispute is over the delivery method of the notices, specifically the Taxpayers' argument that the Board is required to conduct its own mailings or specifically appoint mailing duties and then oversee the delivery of its notices.

¶ 16        As previously mentioned, N.C. Gen. Stat. § 105-290(e) provides that "notice of appeal from an order of . . . a board of equalization and review shall be filed with the Property Tax Commission within 30 days after the date the board mailed a notice of its decision to the property owner." Taxpayers argue that the Board's notices of decision were not mailed in compliance with this statute, because the Board allowed the Mecklenburg Assessor's Office to conduct its mailings, and the Assessor's Office hired South Data, a private third-party, to mail the notices. Taxpayers interpret § 105-290(e)'s language quite literally to mean that the Board, or presumably its members, must physically mail its notices of decision. We disagree and hold that the notices were mailed in accordance with the statute.

> When engaging in statutory interpretation, our Supreme Court has explained the primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute. The foremost task in statutory interpretation is to determine legislative intent while giving the language of the statute its natural and ordinary meaning *unless the context requires otherwise*. Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language.

*Bryant v. Wake Forest Univ. Baptist Med. Ctr.*, 2022-NCCOA-89, ¶33 (citing *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004)) (emphasis added, internal marks omitted).

First, Taxpayers argue that we should strictly construe the language of the statute to mean that only the Board may mail the notices of decision because the language reads "the date *the board mailed* a notice of its decision." N.C. Gen. Stat. § 105-290(e) (2021). Taxpayers argue that the plain meaning of "the board mailed" is that the Board must do the physical mailing, and that we should attribute great weight to this precise wording, which could have otherwise read "the date the decision was mailed" or "the date the taxpayer was notified." Taxpayers, however, ignore the context of the statutory language at issue.

While it is true, as in *Bass Income Fund*, that "it is our duty to apply legislation as written," it is also equally true that in statutory interpretation the "foremost task . . . is to determine legislative intent[.]" *Bryant*, 2022-NCCOA-89, ¶33. If we were to

construe the language of § 105-290(e) to mean that only the Board or its members may physically mail notices, as the Taxpayers contend, we would be ignoring the purpose behind of § 105-290(e) in favor of a potentially nonsensical interpretation. The language at issue must be examined in its context. Section 105-290 is titled "Appeals to Property Tax Commission" and subsection 105-290(e) is titled "Time Limits for Appeals." Out of context, Taxpayers creatively argue that the language specifically requires the Board to mail the notices, but we do not believe our legislature intended to create such strict mailing procedures for the Board.

¶ 19 If our legislature intended for the Board to conduct its own mailings, as Taxpayers contend, this duty would have been specified under § 105-322(g) with the Board's other statutory duties. Subsection 105-322(g), which designates the "Powers and Duties" of the Board, mentions the following about mailings under subdivision 105-322(g)(2), "Duty to Hear Taxpayer Appeals":

> a. A request for a hearing under this subdivision (g)(2) shall be made in writing to or by personal appearance before the board prior to its adjournment. However, if the taxpayer requests review of a decision made by the board under the provisions of subdivision (g)(1), above, notice of which was mailed fewer than 15 days prior to the board's adjournment, the request for a hearing thereon may be made within 15 days after the *notice of the board's decision was mailed.*
>
> . . .
>
> d. On the basis of its decision after any hearing

> conducted under this subdivision (g)(2), the board shall adopt and have entered in its minutes an order reducing, increasing, or confirming the appraisal appealed or listing or removing from the tax lists the property whose omission or listing has been appealed. *The board shall notify the appellant by mail* as to the action taken on the taxpayer's appeal not later than 30 days after the board's adjournment.

*Id*. § 105-322(g)(2)(a), (d) (emphases added). The passive construction of "the board's decision was mailed" and complementary phrase "shall notify the appellant by mail" characteristically omit the subject who must do the mailing. The statute makes clear that the Board has the duty to *notify* the taxpayer and that such notification must be *mailed*, but the statute leaves flexible what procedure the Board must follow when conducting its mailings.

¶ 20 Moreover, Taxpayers' argument fails to consider the functionality of the Board from a practical standpoint. The Board is comprised of voluntary members. In a county such as Mecklenburg, one of the largest in the State, the Board likely issues thousands of notices to property owners every year. Surely our legislature did not intend when enacting § 105-290(e) that the entire Board, or even one of its voluntary members, must personally visit the United States Postal Service to drop off the thousands of notices of decision in order for those notices to be valid.

¶ 21 Second, Taxpayers argue in their brief that "nothing in N.C.G.S. § 105-322 grants the [Board] authority to delegate its duties to an off-site non-governmental

third-party to mail its decision to the property owner[,]" and that "[h]ad the Legislature intended to allow the 'board' to outsource that [mailing] responsibility to a third-party entity, the statute would have provided such an option." However, Taxpayers later move away from this stance, conceding at oral argument that the Board *may* appoint third parties to conduct its mailings, but only if the Board still specifically oversees the mailings. Taxpayers then urge that the Board's delivery method here exceeded its statutory authority, because there is no record evidence that the Board specifically appointed the Assessor's Office or South Data to conduct its mailings and likewise no evidence exists that the Board oversaw the mailings in this case.

¶ 22        While the statute does not specify who must drop the Board's mail off at the Post Office, the statute neither expressly nor impliedly prohibits the Board, or the assessor, from employing third-parties to assist in delivering its mail. The statute *does*, however, specifically appoint the assessor as clerk to the Board. N.C. Gen. Stat. § 105-322(d) ("The assessor shall serve as clerk to the board of equalization and review[.]"). Additionally, in a provision about the assessor's powers and duties, the statute provides that "[the county assessor] shall perform the duties imposed upon him by law, and he shall have and exercise all powers reasonably necessary in the performance of his duties not inconsistent with the Constitution or the laws of this State." *Id*. § 105-296(a). We reject the argument that the Board needed to expressly

appoint the assessor to conduct its mailings when the statute clearly designates the assessor as the clerk to the Board. We also find no basis to hold that the Board must then supervise the assessor in mailing the notices in order for them to be valid.

¶ 23 Because the notices of decision were valid and the Taxpayers' appeals were not timely, the Commission correctly determined it did not have jurisdiction to hear the Taxpayers' appeals. *In re Appeal of La. Pac. Corp.*, 208 N.C. App. 457, 461-62, 703 S.E.2d 190, 193 (2010) (holding that if the taxpayer fails to perfect its appeal under the statute, the Commission is deprived of jurisdiction). We therefore affirm the Commission's decision to grant the County's motions to dismiss.

**D. COVID-19 Emergency Orders**

¶ 24 Taxpayers further argue that the deadline to file their notices of appeal was tolled by the emergency COVID-19 orders issued by the North Carolina Supreme Court ("NCSC Orders"), or alternatively, the emergency COVID-19 order issued by the Office of Administrative Hearings ("OAH Order").

¶ 25 On 19 March 2020, former Chief Justice Cheri Beasley of our Supreme Court entered an emergency order stating,

> I order that all pleadings, motions, notices, and other documents and papers that were or are due to be filed in any county of this state on or after 16 March 2020 and before the close of business on 17 April 2020 in civil actions, criminal actions, estates, and special proceedings shall be deemed to be timely filed if they are filed before the close of business on 17 April 2020.

On 27 March 2020, our Supreme Court imposed another order extending all "[d]eadlines imposed by the Rules of Appellate Procedure that fall between 27 March 2020 and 30 April 2020" for 60 days. On 13 April 2020, our Supreme Court extended the 19 March Order and clarified that the order applied to "documents and papers due to be filed and acts due to be done in the trial courts."

Taxpayers argue that the NCSC Orders tolled the deadline on their notices of appeal, because "[t]he Property Tax Commission is a trial court[.]" We disagree and hold that the Commission is an administrative agency, not a trial court.

Article IV of our Constitution allows the General Assembly to confer reasonably necessary judicial powers to administrative agencies but does not allow the establishment of courts outside of this Article. Article IV reads, in part, as follows:

> Section 1. Judicial power. The judicial power of the State shall, except as provided in Section 3 of this Article, be vested in a Court for the Trial of Impeachments and in a General Court of Justice. The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government, nor shall it establish or authorize any courts other than as permitted by this Article.
>
> Section 2. General Court of Justice. The General Court of Justice shall constitute a unified judicial system for purposes of jurisdiction, operation, and administration, and shall consist of an Appellate Division, a Superior Court Division, and a District Court Division.
>
> Section 3. Judicial powers of administrative agencies. The

General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created. Appeals from administrative agencies shall be to the General Court of Justice.

N.C. Const. art. IV, §§ 1-3.

The conference of judicial power on an administrative agency is, therefore, not the establishment of a court, which our General Assembly is expressly not authorized to do outside of Article IV. For example, in *State ex rel. N.C. Utilities Comm'n v. Old Fort Finishing Plant,* our Supreme Court addressed whether it had jurisdiction to review decisions of the Utilities Commission on direct appeal. 264 N.C. 416, 417, 142 S.E.2d 8, 9 (1965). In doing so, the Court remarked that the Utilities Commission, "a creature of the General Assembly, is an administrative agency of the State with such powers and duties as are given to it by statute. These powers and duties are of a dual nature—supervisory or regulatory and judicial." *Id.* at 420, 142 S.E.2d at 11 (internal marks and citation omitted). The Court ultimately concluded that the General Assembly did not have authority under Article IV to allow direct appeals from "administrative agencies to the Supreme Court without prior appeal to and review by a lower court within the General Court of Justice." *Id.* at 422, 142 S.E.2d at 13. *But see* N.C. Gen. Stat. § 7A-29(b) (enacting that certain appeals from the Utilities Commission now go directly to our Supreme Court, modified after the decision in *Old*

*Fort Finishing Plant*). In doing so, the Court held that:

> [a]dministrative agencies referred to in Section 3 of Article IV *ex vi termini* are distinguished from courts. They are not constituent parts of the General Court of Justice. Section 1 of Article IV provides expressly that the General Assembly shall have no power to establish or authorize any courts other than as permitted by this Article.

*Id.*, at 422, 142 S.E.2d at 12 (internal marks omitted).

Administrative agencies, even if quasi-judicial, are also not considered trial courts for purposes of limitations periods. *See Ocean Hill Joint Venture v. N.C. Dep't of Env't, Health & Nat. Res.*, 333 N.C. 318, 321, 426 S.E.2d 274, 276 (1993). In *Ocean Hill*, the Department of Natural Resources and Community Development (the "Department") sent a Notice of Violation to Ocean Hill for violations of the Sedimentation Pollution Control Act. *Id.* at 319, 426 S.E.2d at 275. After being assessed with a civil penalty, Ocean Hill filed a petition for a contested case hearing with the OAH. *Id.* at 319-20, 426 S.E.2d at 275. Our Supreme Court again relied on Article IV, Section 3 of our Constitution to hold that "the grant of limited judicial authority to an administrative agency does not transform the agency into a court for purposes of the statute of limitations." *Id.* at 321, 426 S.E.2d at 276. The Court concluded that an administrative assessment of a civil penalty by the Department was "not the institution of an action or proceeding in a court[,]" and therefore the limitations period under N.C. Gen. Stat. § 1-54 did not apply. *Id.* at 321, 324, 426

S.E.2d at 276, 278.

¶ 30        In further applying *Ocean Hill*, our Supreme Court has suggested that the Property Tax Commission is an administrative agency, not a trial court. *See In re Twin Cnty. Motorsports, Inc.*, 367 N.C. 613, 617, 766 S.E.2d 832, 835 (2014). In *Twin County*, the Court concluded that "an appearance by a nonattorney before an administrative hearing officer does not constitute the unauthorized practice of law[.]" *Id.* In doing so, the Court drew a parallel between appearing before an administrative hearing officer to appearing before the Property Tax Commission, remarking that its

> conclusion . . . is in line with recent legislative action. The North Carolina General Assembly has recently provided that, in contested cases before the Office of Administrative Hearings (OAH) and in appeals to the Property Tax Commission, a business entity may represent itself using a nonattorney representative. While not directly governing the matter *sub judice* because the legislation applies to contested cases before the OAH and appeals to the Property Tax Commission . . . , the passage of this legislation is consistent with our conclusion that a nonattorney's appearance before an administrative hearing officer does not constitute the unauthorized practice of law under N.C.G.S. § 84-4.

*Id.* (cleaned up).

¶ 31        In describing the appeals process for property tax assessments, we have previously explained:

> North Carolina law provides two avenues by which a taxpayer may seek relief from an unjust property tax assessment: *administrative* review followed by *judicial*

> review in the Court of Appeals, and direct judicial review
> in Superior or District court. Administrative review begins
> in the County Board of Equalization and Review. . . . Any
> taxpayer who wishes to except to an order of the County
> Board shall appeal to the State Property Tax Commission.
> In turn, a taxpayer who is unsatisfied with the decision of
> the Property Tax Commission shall appeal to the North
> Carolina Court of Appeals, and then to the North Carolina
> Supreme Court.

*Johnston v. Gaston County*, 71 N.C. App. 707, 709, 323 S.E.2d 381, 382 (1984)

(emphases added) (citations omitted). *See also Brock v. N.C. Prop. Tax Comm'n*, 290

N.C. 731, 737, 228 S.E.2d 254, 258 (1976) ("As to the hearing before the county board

of equalization and review: The *administrative decisions of the Property Tax

Commission*, whether with respect to the schedule of values or the appraisal of

property, are always subject to judicial review after administrative procedures have

been exhausted." (emphasis added)).

¶ 32        Our legislature has also referred to the Commission as an administrative

agency when outlining the appeals process from Commission decisions. *See* N.C. Gen.

Stat. § 7A-29 (2021).

> § 7A-29.  Appeals of right from certain administrative
> agencies.
>
> (a)      From any final order or decision of . . . the Property
> Tax Commission under G.S. 105-290 and G.S. 105-342, . . .
> appeal as of right lies directly to the Court of Appeals.

*Id.* § 7A-29(a).

¶ 33        We hold that for purposes of the NCSC Orders, the Commission is not a trial

court but an administrative agency vested with judicial powers consistent with Article IV, Section 3 of our Constitution. Therefore, because the Commission is a "creature of the General Assembly," the extensions granted by our Supreme Court for filings to "trial courts" do not apply to Taxpayers' filings to the Commission.

Taxpayers argue that, even if the Commission is an administrative agency, then the filing extensions issued by the Supreme Court would still apply, because they were expressly adopted in the OAH Order. We disagree.

On 27 May 2020, former Chief Administrative Law Judge Julian Mann III, ordered the following:

> On May 2nd, 2020, The Honorable Roy Cooper, Governor of the State of North Carolina, signed Senate Bill 704 into law . . . [which] authorizes the Chief Administrative Law Judge, by order, to extend the time or period of limitation for the filing of a petition for a *contested case*, whether established by N.C.G.S. § 150B-23(f) or by another statute, "[w]hen the Chief Justice of the North Carolina Supreme Court determines and declares that catastrophic conditions exist or have existed in one or more counties of the State and issues an order pursuant to G.S. 7A-39(b)."
>
> . . .
>
> In light of the May 21st, 2020 order issued by the Chief Justice of the North Carolina Supreme Court and by the authority granted to the Chief Administrative Law Judge under Session Law 2020-3, I now order that all petitions for a *contested case*, originating in any of North Carolina's 100 counties (or as may be otherwise authorized by law), that were or are due to be filed on or after March 19th, 2020, and before the close of business on July 31st, 2020,

shall be deemed to be timely filed *if they are filed in the Office of Administrative Hearings* before the close of business on July 31st, 2020, notwithstanding the time or period of limitation established by N.C.G.S. § 150B-23(f) or by any other statute.

Because the OAH Order only extended filing deadlines for contested cases before the OAH, the order cannot be applied to extend the filing deadline for the Taxpayers' appeals in this case. *See* N.C. Gen. Stat. § 150B-23(f) (granting the Chief Administrative Law Judge authority to issue an emergency extension, such as the OAH Order, only for the filing of contested cases).

## III. Conclusion

For the foregoing reasons, we affirm the Commission's dismissal of the Taxpayers' appeals because the notices of appeal were not timely filed, the Commission's mailing procedure did not violate § 105-290(e), and the statutory 30-day deadline for filing was not extended by the NCSC or OAH Orders.

AFFIRMED.

Judges DIETZ and COLLINS concur.