IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-205

 No. COA21-357

 Filed 5 April 2022

 Property Tax Commission, Nos. 20 PTC 0239, 20 PTC 0240, 20 PTC 0241

 IN THE MATTER OF THE APPEALS OF:

 POP Capitol Towers, LP,

 P&L Coliseum Residential Developer, LLC,

 P&L Coliseum, LP.

 Appeal by Taxpayers from orders of dismissal entered 28 January 2021 by the

 North Carolina Property Tax Commission. Heard in the Court of Appeals 15

 December 2021.

 The Hillis Firm LLC, by Lindsey Walker Hillis, for Taxpayers-Appellants.

 Ruff Bond Cobb Wade & Bethune, LLP, by Ronald L. Gibson and Robert S.
 Adden, Jr., for Appellee Mecklenburg County.

 JACKSON, Judge.

¶1 POP Capitol Towers, LP (“POP”), P&L Coliseum Residential Developer, LLC

 (“P&L Developer”), and P&L Coliseum, LP (“P&L”) (collectively “Taxpayers”) argue

 that their notices of appeal to the Property Tax Commission (the “Commission”) were

 timely because (1) the notices of decision were not properly mailed in compliance with

 N.C. Gen. Stat. § 105-290(e), and (2) emergency COVID-19 orders issued by our

 Supreme Court and the Office of Administrative Hearings (“OAH”) extended the
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 filing deadlines for their notices of appeal. After careful review, we reject Taxpayers’

 arguments and affirm the Commission’s orders of dismissal.

 I. Background

¶2 This case deals with three property tax appeals from the Mecklenburg County

 Board of Equalization and Review (the “Board”) to the Commission. In 2019,

 Taxpayers each received property valuations from the Commission, which they

 disputed. Thereafter, Taxpayers appealed the valuations to the Board.

¶3 On 28 February 2020, a Notice of Decision by the Board, dated 2 March 2020,

 was mailed to each Taxpayer at their respective addresses. The notices of decision

 were mailed by South Data, a private company contracted by the Mecklenburg

 County Assessor’s Office for mailing services. On 30 March 2020, Taxpayers mailed

 a Notice of Appeal and Application for Hearing for each property to the Commission,

 the Mecklenburg County Assessors’ Office, and the Mecklenburg County’s attorney.

 The notices of appeal were mailed through the United States Postal Service, but the

 envelopes containing the notices were not postmarked. The appeals were received

 and filed with the Commission on 6 April 2020.

¶4 On 8 April 2020, the Commission mailed an acknowledgment of the appeals to

 the Taxpayers, stating that the appeals were untimely and assigning the following

 case numbers: 20 PTC 239 for appellant POP, 20 PTC 240 for appellant P&L

 Developer, and 20 PTC 241 for appellant P&L. On 9 September 2020, Mecklenburg
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 County (the “County”) filed and served a Motion to Dismiss the Taxpayers’ appeals

 in each case. The motions to dismiss attached an affidavit of B. Mallard, Project

 Manager for South Data.

¶5 In her affidavit, Ms. Mallard stated that (1) part of her job was to oversee

 mailings from the County, (2) she personally reviewed the files for mailing, including

 the Board’s notices of decision to the Taxpayers in these cases, and (3) the Board’s

 notices of decision dated 2 March 2020 were mailed on 28 February 2020.

¶6 On 25 November 2020, Taxpayers filed responses in opposition to the County’s

 motions to dismiss. Taxpayers asserted, inter alia, that (1) the Board failed to

 properly mail the notices in compliance with N.C. Gen. Stat. § 105-290(e), and (2)

 their appeals were timely filed under the emergency COVID-19 orders issued by the

 Supreme Court of North Carolina.

¶7 The motions were heard before the Commission on 9 December 2020. After

 receiving arguments from the parties’ counsel, the Commission granted the County’s

 motions to dismiss the appeals. On 28 January 2021, the Commission entered an

 Order of Dismissal for each appeal.

¶8 The Commission made the following findings of fact for each Taxpayer:

 2. . . . the Board mailed notice of its decision to the
 Appellant by letter dated March 2, 2020. The Appellant
 contends that the Board did not actually mail notice of its
 decision to the Appellant, because the Board contracted
 with a third party vendor to provide mailing services in
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 connection with its notice of decision. While we do not find
 this argument to be persuasive, we note that there is no
 dispute that the notice was actually received by the
 appellant, and we note further that the notice of appeal
 filed with the Commission is marked as signed by the
 Appellant’s attorney on March 30, 2020. Accordingly, we
 find that the Board’s notice of decision was mailed by letter
 dated March 2, 2020.

 3. April 1, 2020 is thirty days after March 2, 2020.

 4. On April 6, 2020, the Property Tax Commission
 received a notice of appeal filed by the Appellant, appealing
 the Board’s decision.

 5. The Appellant’s notice of appeal was submitted to
 the Property Tax Commission by United States mail, but
 the envelope containing the notice was not postmarked.

¶9 The Commission also made the following conclusions of law:

 2. Because the Board mailed its notice of decision to the
 property owner by letter dated March 2, 2020, N.C. Gen.
 Stat. § 105-290(e) requires a notice of appeal from said
 decision to have been filed with the Commission by April 1,
 2020.

 3. . . . While orders issuing from the Supreme Court and
 from the Chief Justice clearly apply to the various divisions
 of the General Court of Justice, the Commission is an
 administrative agency, and not a part of the State’s court
 system. Therefore, such orders are inapplicable to the
 deadlines created by the General Assembly for the
 administrative process of appeals before the Commission.

 ...

 5. . . . Even if we were to assume that the appeal was
 mailed on March 30, 2020, the statute defines the date of
 filing as the earlier of the date actually received or the date
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 postmarked by the United States Postal Service. Without
 a postmark, the date of mailing is irrelevant.

 6. Because the notice of appeal was submitted by
 United States mail; was received in the office of the
 Commission on April 6, 2020; and did not bear a postmark
 stamped by the United States Postal Service, the appeal is
 considered filed on April 6, 2020.

 ...

 8. Because the Appellant did not perfect the appeal
 from the Board within the time required by the statute, the
 Commission has no jurisdiction to hear the Appellant’s
 appeal.

¶ 10 Taxpayers timely filed their notices of appeal to this Court in each case.

 Because the appeals are based on the same facts and issues of law, the parties have

 agreed to consolidate the three appeals before this Court.

 II. Analysis

 A. Standard of Review

 We review decisions of the Commission pursuant to
 N.C.G.S. § 105-345.2. Questions of law receive de novo
 review, while issues such as sufficiency of the evidence to
 support the Commission’s decision are reviewed under the
 whole-record test. Under a de novo review, the court
 considers the matter anew and freely substitutes its own
 judgment for that of the Commission.

 In re Greens of Pine Glen LP, 356 N.C. 642, 646-47, 576 S.E.2d 316, 319 (2003)

 (citations omitted). Here, the issues advanced by Taxpayers are questions of law and

 therefore receive de novo review by this Court.
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 B. “Time Limit for Appeals” to the Board under N.C. Gen. Stat. § 105-290(e)

¶ 11 North Carolina General Statute § 105-290(e) requires a notice of appeal to be

 filed with the Commission “within 30 days after the date the board mailed a notice of

 its decision to the property owner.” N.C. Gen. Stat. § 105-290(e) (2021).

 A notice of appeal submitted to the Property Tax
 Commission by United States mail is considered to be filed
 on the date shown on the postmark stamped by the United
 States Postal Service. If an appeal submitted by United
 States mail is not postmarked or the postmark does not
 show the date of mailing, the appeal is considered to be
 filed on the date it is received in the office of the
 Commission. A property owner who files an appeal with
 the Commission has the burden of proving that the appeal
 is timely.

 Id. § 105-290(g). Here, it is undisputed that the Taxpayers’ notices of appeal were

 not postmarked by the United States Postal Service and were not delivered to the

 Commission until after the 30-day window had passed.

¶ 12 We previously dealt with this postmarking issue in In re Appeal of Bass Income

 Fund, where we held that “a notice of appeal submitted to the Commission via the

 Postal Service, but which does not bear a postmark stamped by the Service, is

 considered filed only upon receipt by the Commission.” 115 N.C. App. 703, 705, 446

 S.E.2d 594, 596 (1994) (emphasis in original). This Court acknowledged that “it is

 our duty to apply legislation as written, whatever our opinion may be as to its efficacy

 or as to the hardship it may impose in individual cases.” Id. at 706, 246 S.E.2d at
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 596. See also In re Civil Penalty, 324 N.C. 373, 384, 379 S.E. 2d 30, 37 (1989) (“Where

 a panel of the Court of Appeals has decided the same issue, albeit in a different case,

 a subsequent panel of the same court is bound by that precedent, unless it has been

 overturned by a higher court.”).

¶ 13 Here, it is undisputed that the Taxpayers received the Board’s notices of

 decision, which were mailed by letter dated 2 March 2020. Therefore, § 105-290(e)

 requires that Taxpayers must have filed notice of appeal by 1 April 2020, which is 30

 days after the notices of decision were mailed, for their appeals to be timely. Although

 the notices of appeal were apparently signed and mailed by Taxpayers on 30 March

 2020, the Commission did not actually receive the Taxpayers’ notices of appeal until

 6 April 2020. Because the notices of appeal were “not postmarked or the postmark

 does not show the date of mailing, the appeal is considered to be filed on the date it

 is received in the office of the Commission[,]” N.C. Gen. Stat. § 105-290(g), which in

 this case is 6 April 2020, beyond the 30-day statutory window.

¶ 14 Taxpayers, however, advance two arguments1 that their notices of appeals

 1 We note that Taxpayers also briefly argue that “there is no evidence the [Board] ever

 mailed the decision to the property owner[,]” and dispute the admission of Ms. Mallard’s
 affidavit, which they claim does not meet the business records exception for hearsay. Putting
 aside any information from the affidavit, it is undisputed that the Taxpayers actually
 received the Board’s notices of decision, which were dated 2 March 2020. Therefore, even
 assuming the affidavit was inadmissible, any error from the Commission here would be
 harmless given that the notices themselves, which are signed and acknowledged by
 Taxpayers’ attorney in their notices of appeal on 30 March 2020, prove the decisions were
 issued and received.
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 were timely: (1) the Board’s notices of decision were not properly mailed in compliance

 with § 105-290(e); and (2) emergency COVID-19 orders issued by our Supreme Court

 and the OAH extended the filing deadlines for their notices of appeal. We carefully

 review and reject both arguments.

 C. Mailing the Notices of Decision under § 105-290(e)

¶ 15 Here, there is no dispute that the Taxpayers actually received the Board’s

 notices of decision, and that the Board actually issued the notices of decision. The

 only dispute is over the delivery method of the notices, specifically the Taxpayers’

 argument that the Board is required to conduct its own mailings or specifically

 appoint mailing duties and then oversee the delivery of its notices.

¶ 16 As previously mentioned, N.C. Gen. Stat. § 105-290(e) provides that “notice of

 appeal from an order of . . . a board of equalization and review shall be filed with the

 Property Tax Commission within 30 days after the date the board mailed a notice of

 its decision to the property owner.” Taxpayers argue that the Board’s notices of

 decision were not mailed in compliance with this statute, because the Board allowed

 the Mecklenburg Assessor’s Office to conduct its mailings, and the Assessor’s Office

 hired South Data, a private third-party, to mail the notices. Taxpayers interpret

 § 105-290(e)’s language quite literally to mean that the Board, or presumably its

 members, must physically mail its notices of decision. We disagree and hold that the

 notices were mailed in accordance with the statute.
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 When engaging in statutory interpretation, our Supreme
 Court has explained the primary rule of statutory
 construction is that the intent of the legislature controls
 the interpretation of a statute. The foremost task in
 statutory interpretation is to determine legislative intent
 while giving the language of the statute its natural and
 ordinary meaning unless the context requires otherwise.
 Where the statutory language is clear and unambiguous,
 the Court does not engage in judicial construction but must
 apply the statute to give effect to the plain and definite
 meaning of the language.

 Bryant v. Wake Forest Univ. Baptist Med. Ctr., 2022-NCCOA-89, ¶33 (citing Carolina

 Power & Light Co. v. City of Asheville, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004))

 (emphasis added, internal marks omitted).

¶ 17 First, Taxpayers argue that we should strictly construe the language of the

 statute to mean that only the Board may mail the notices of decision because the

 language reads “the date the board mailed a notice of its decision.” N.C. Gen. Stat.

 § 105-290(e) (2021). Taxpayers argue that the plain meaning of “the board mailed”

 is that the Board must do the physical mailing, and that we should attribute great

 weight to this precise wording, which could have otherwise read “the date the decision

 was mailed” or “the date the taxpayer was notified.” Taxpayers, however, ignore the

 context of the statutory language at issue.

¶ 18 While it is true, as in Bass Income Fund, that “it is our duty to apply legislation

 as written,” it is also equally true that in statutory interpretation the “foremost task

 . . . is to determine legislative intent[.]” Bryant, 2022-NCCOA-89, ¶33. If we were to
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 construe the language of § 105-290(e) to mean that only the Board or its members

 may physically mail notices, as the Taxpayers contend, we would be ignoring the

 purpose behind of § 105-290(e) in favor of a potentially nonsensical interpretation.

 The language at issue must be examined in its context. Section 105-290 is titled

 “Appeals to Property Tax Commission” and subsection 105-290(e) is titled “Time

 Limits for Appeals.” Out of context, Taxpayers creatively argue that the language

 specifically requires the Board to mail the notices, but we do not believe our

 legislature intended to create such strict mailing procedures for the Board.

¶ 19 If our legislature intended for the Board to conduct its own mailings, as

 Taxpayers contend, this duty would have been specified under § 105-322(g) with the

 Board’s other statutory duties. Subsection 105-322(g), which designates the “Powers

 and Duties” of the Board, mentions the following about mailings under subdivision

 105-322(g)(2), “Duty to Hear Taxpayer Appeals”:

 a. A request for a hearing under this subdivision (g)(2)
 shall be made in writing to or by personal appearance
 before the board prior to its adjournment. However, if the
 taxpayer requests review of a decision made by the board
 under the provisions of subdivision (g)(1), above, notice of
 which was mailed fewer than 15 days prior to the board’s
 adjournment, the request for a hearing thereon may be
 made within 15 days after the notice of the board’s decision
 was mailed.

 ...

 d. On the basis of its decision after any hearing
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 conducted under this subdivision (g)(2), the board shall
 adopt and have entered in its minutes an order reducing,
 increasing, or confirming the appraisal appealed or listing
 or removing from the tax lists the property whose omission
 or listing has been appealed. The board shall notify the
 appellant by mail as to the action taken on the taxpayer’s
 appeal not later than 30 days after the board’s
 adjournment.

 Id. § 105-322(g)(2)(a), (d) (emphases added). The passive construction of “the board’s

 decision was mailed” and complementary phrase “shall notify the appellant by mail”

 characteristically omit the subject who must do the mailing. The statute makes clear

 that the Board has the duty to notify the taxpayer and that such notification must be

 mailed, but the statute leaves flexible what procedure the Board must follow when

 conducting its mailings.

¶ 20 Moreover, Taxpayers’ argument fails to consider the functionality of the Board

 from a practical standpoint. The Board is comprised of voluntary members. In a

 county such as Mecklenburg, one of the largest in the State, the Board likely issues

 thousands of notices to property owners every year. Surely our legislature did not

 intend when enacting § 105-290(e) that the entire Board, or even one of its voluntary

 members, must personally visit the United States Postal Service to drop off the

 thousands of notices of decision in order for those notices to be valid.

¶ 21 Second, Taxpayers argue in their brief that “nothing in N.C.G.S. § 105-322

 grants the [Board] authority to delegate its duties to an off-site non-governmental
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 third-party to mail its decision to the property owner[,]” and that “[h]ad the

 Legislature intended to allow the ‘board’ to outsource that [mailing] responsibility to

 a third-party entity, the statute would have provided such an option.” However,

 Taxpayers later move away from this stance, conceding at oral argument that the

 Board may appoint third parties to conduct its mailings, but only if the Board still

 specifically oversees the mailings. Taxpayers then urge that the Board’s delivery

 method here exceeded its statutory authority, because there is no record evidence

 that the Board specifically appointed the Assessor’s Office or South Data to conduct

 its mailings and likewise no evidence exists that the Board oversaw the mailings in

 this case.

¶ 22 While the statute does not specify who must drop the Board’s mail off at the

 Post Office, the statute neither expressly nor impliedly prohibits the Board, or the

 assessor, from employing third-parties to assist in delivering its mail. The statute

 does, however, specifically appoint the assessor as clerk to the Board. N.C. Gen. Stat.

 § 105-322(d) (“The assessor shall serve as clerk to the board of equalization and

 review[.]”). Additionally, in a provision about the assessor’s powers and duties, the

 statute provides that “[the county assessor] shall perform the duties imposed upon

 him by law, and he shall have and exercise all powers reasonably necessary in the

 performance of his duties not inconsistent with the Constitution or the laws of this

 State.” Id. § 105-296(a). We reject the argument that the Board needed to expressly
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 appoint the assessor to conduct its mailings when the statute clearly designates the

 assessor as the clerk to the Board. We also find no basis to hold that the Board must

 then supervise the assessor in mailing the notices in order for them to be valid.

¶ 23 Because the notices of decision were valid and the Taxpayers’ appeals were not

 timely, the Commission correctly determined it did not have jurisdiction to hear the

 Taxpayers’ appeals. In re Appeal of La. Pac. Corp., 208 N.C. App. 457, 461-62, 703

 S.E.2d 190, 193 (2010) (holding that if the taxpayer fails to perfect its appeal under

 the statute, the Commission is deprived of jurisdiction). We therefore affirm the

 Commission’s decision to grant the County’s motions to dismiss.

 D. COVID-19 Emergency Orders

¶ 24 Taxpayers further argue that the deadline to file their notices of appeal was

 tolled by the emergency COVID-19 orders issued by the North Carolina Supreme

 Court (“NCSC Orders”), or alternatively, the emergency COVID-19 order issued by

 the Office of Administrative Hearings (“OAH Order”).

¶ 25 On 19 March 2020, former Chief Justice Cheri Beasley of our Supreme Court

 entered an emergency order stating,

 I order that all pleadings, motions, notices, and other
 documents and papers that were or are due to be filed in
 any county of this state on or after 16 March 2020 and
 before the close of business on 17 April 2020 in civil actions,
 criminal actions, estates, and special proceedings shall be
 deemed to be timely filed if they are filed before the close
 of business on 17 April 2020.
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 On 27 March 2020, our Supreme Court imposed another order extending all

 “[d]eadlines imposed by the Rules of Appellate Procedure that fall between 27 March

 2020 and 30 April 2020” for 60 days. On 13 April 2020, our Supreme Court extended

 the 19 March Order and clarified that the order applied to “documents and papers

 due to be filed and acts due to be done in the trial courts.”

¶ 26 Taxpayers argue that the NCSC Orders tolled the deadline on their notices of

 appeal, because “[t]he Property Tax Commission is a trial court[.]” We disagree and

 hold that the Commission is an administrative agency, not a trial court.

¶ 27 Article IV of our Constitution allows the General Assembly to confer

 reasonably necessary judicial powers to administrative agencies but does not allow

 the establishment of courts outside of this Article. Article IV reads, in part, as follows:

 Section 1. Judicial power. The judicial power of the State
 shall, except as provided in Section 3 of this Article, be
 vested in a Court for the Trial of Impeachments and in a
 General Court of Justice. The General Assembly shall
 have no power to deprive the judicial department of any
 power or jurisdiction that rightfully pertains to it as a co-
 ordinate department of the government, nor shall it
 establish or authorize any courts other than as permitted
 by this Article.

 Section 2. General Court of Justice. The General Court of
 Justice shall constitute a unified judicial system for
 purposes of jurisdiction, operation, and administration,
 and shall consist of an Appellate Division, a Superior Court
 Division, and a District Court Division.

 Section 3. Judicial powers of administrative agencies. The
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 General Assembly may vest in administrative agencies
 established pursuant to law such judicial powers as may be
 reasonably necessary as an incident to the accomplishment
 of the purposes for which the agencies were created.
 Appeals from administrative agencies shall be to the
 General Court of Justice.

 N.C. Const. art. IV, §§ 1-3.

¶ 28 The conference of judicial power on an administrative agency is, therefore, not

 the establishment of a court, which our General Assembly is expressly not authorized

 to do outside of Article IV. For example, in State ex rel. N.C. Utilities Comm’n v. Old

 Fort Finishing Plant, our Supreme Court addressed whether it had jurisdiction to

 review decisions of the Utilities Commission on direct appeal. 264 N.C. 416, 417, 142

 S.E.2d 8, 9 (1965). In doing so, the Court remarked that the Utilities Commission, “a

 creature of the General Assembly, is an administrative agency of the State with such

 powers and duties as are given to it by statute. These powers and duties are of a dual

 nature—supervisory or regulatory and judicial.” Id. at 420, 142 S.E.2d at 11 (internal

 marks and citation omitted). The Court ultimately concluded that the General

 Assembly did not have authority under Article IV to allow direct appeals from

 “administrative agencies to the Supreme Court without prior appeal to and review by

 a lower court within the General Court of Justice.” Id. at 422, 142 S.E.2d at 13. But

 see N.C. Gen. Stat. § 7A-29(b) (enacting that certain appeals from the Utilities

 Commission now go directly to our Supreme Court, modified after the decision in Old
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 Fort Finishing Plant). In doing so, the Court held that:

 [a]dministrative agencies referred to in Section 3 of Article
 IV ex vi termini are distinguished from courts. They are
 not constituent parts of the General Court of Justice.
 Section 1 of Article IV provides expressly that the General
 Assembly shall have no power to establish or authorize any
 courts other than as permitted by this Article.

 Id., at 422, 142 S.E.2d at 12 (internal marks omitted).

¶ 29 Administrative agencies, even if quasi-judicial, are also not considered trial

 courts for purposes of limitations periods. See Ocean Hill Joint Venture v. N.C. Dep’t

 of Env’t, Health & Nat. Res., 333 N.C. 318, 321, 426 S.E.2d 274, 276 (1993). In Ocean

 Hill, the Department of Natural Resources and Community Development (the

 “Department”) sent a Notice of Violation to Ocean Hill for violations of the

 Sedimentation Pollution Control Act. Id. at 319, 426 S.E.2d at 275. After being

 assessed with a civil penalty, Ocean Hill filed a petition for a contested case hearing

 with the OAH. Id. at 319-20, 426 S.E.2d at 275. Our Supreme Court again relied on

 Article IV, Section 3 of our Constitution to hold that “the grant of limited judicial

 authority to an administrative agency does not transform the agency into a court for

 purposes of the statute of limitations.” Id. at 321, 426 S.E.2d at 276. The Court

 concluded that an administrative assessment of a civil penalty by the Department

 was “not the institution of an action or proceeding in a court[,]” and therefore the

 limitations period under N.C. Gen. Stat. § 1-54 did not apply. Id. at 321, 324, 426
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 S.E.2d at 276, 278.

¶ 30 In further applying Ocean Hill, our Supreme Court has suggested that the

 Property Tax Commission is an administrative agency, not a trial court. See In re

 Twin Cnty. Motorsports, Inc., 367 N.C. 613, 617, 766 S.E.2d 832, 835 (2014). In Twin

 County, the Court concluded that “an appearance by a nonattorney before an

 administrative hearing officer does not constitute the unauthorized practice of law[.]”

 Id. In doing so, the Court drew a parallel between appearing before an administrative

 hearing officer to appearing before the Property Tax Commission, remarking that its

 conclusion . . . is in line with recent legislative action. The
 North Carolina General Assembly has recently provided
 that, in contested cases before the Office of Administrative
 Hearings (OAH) and in appeals to the Property Tax
 Commission, a business entity may represent itself using a
 nonattorney representative. While not directly governing
 the matter sub judice because the legislation applies to
 contested cases before the OAH and appeals to the
 Property Tax Commission . . . , the passage of this
 legislation is consistent with our conclusion that a
 nonattorney’s appearance before an administrative
 hearing officer does not constitute the unauthorized
 practice of law under N.C.G.S. § 84-4.

 Id. (cleaned up).

¶ 31 In describing the appeals process for property tax assessments, we have

 previously explained:

 North Carolina law provides two avenues by which a
 taxpayer may seek relief from an unjust property tax
 assessment: administrative review followed by judicial
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 review in the Court of Appeals, and direct judicial review
 in Superior or District court. Administrative review begins
 in the County Board of Equalization and Review. . . . Any
 taxpayer who wishes to except to an order of the County
 Board shall appeal to the State Property Tax Commission.
 In turn, a taxpayer who is unsatisfied with the decision of
 the Property Tax Commission shall appeal to the North
 Carolina Court of Appeals, and then to the North Carolina
 Supreme Court.

 Johnston v. Gaston County, 71 N.C. App. 707, 709, 323 S.E.2d 381, 382 (1984)

 (emphases added) (citations omitted). See also Brock v. N.C. Prop. Tax Comm’n, 290

 N.C. 731, 737, 228 S.E.2d 254, 258 (1976) (“As to the hearing before the county board

 of equalization and review: The administrative decisions of the Property Tax

 Commission, whether with respect to the schedule of values or the appraisal of

 property, are always subject to judicial review after administrative procedures have

 been exhausted.” (emphasis added)).

¶ 32 Our legislature has also referred to the Commission as an administrative

 agency when outlining the appeals process from Commission decisions. See N.C. Gen.

 Stat. § 7A-29 (2021).

 § 7A-29. Appeals of right from certain administrative
 agencies.

 (a) From any final order or decision of . . . the Property
 Tax Commission under G.S. 105-290 and G.S. 105-342, . . .
 appeal as of right lies directly to the Court of Appeals.

 Id. § 7A-29(a).

¶ 33 We hold that for purposes of the NCSC Orders, the Commission is not a trial
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 court but an administrative agency vested with judicial powers consistent with

 Article IV, Section 3 of our Constitution. Therefore, because the Commission is a

 “creature of the General Assembly,” the extensions granted by our Supreme Court for

 filings to “trial courts” do not apply to Taxpayers’ filings to the Commission.

¶ 34 Taxpayers argue that, even if the Commission is an administrative agency,

 then the filing extensions issued by the Supreme Court would still apply, because

 they were expressly adopted in the OAH Order. We disagree.

¶ 35 On 27 May 2020, former Chief Administrative Law Judge Julian Mann III,

 ordered the following:

 On May 2nd, 2020, The Honorable Roy Cooper, Governor
 of the State of North Carolina, signed Senate Bill 704 into
 law . . . [which] authorizes the Chief Administrative Law
 Judge, by order, to extend the time or period of limitation
 for the filing of a petition for a contested case, whether
 established by N.C.G.S. § 150B-23(f) or by another statute,
 “[w]hen the Chief Justice of the North Carolina Supreme
 Court determines and declares that catastrophic conditions
 exist or have existed in one or more counties of the State
 and issues an order pursuant to G.S. 7A-39(b).”

 ...

 In light of the May 21st, 2020 order issued by the Chief
 Justice of the North Carolina Supreme Court and by the
 authority granted to the Chief Administrative Law Judge
 under Session Law 2020-3, I now order that all petitions
 for a contested case, originating in any of North Carolina’s
 100 counties (or as may be otherwise authorized by law),
 that were or are due to be filed on or after March 19th,
 2020, and before the close of business on July 31st, 2020,
 IN RE POP CAPITOL TOWERS, LP

 2022-NCCOA-205

 Opinion of the Court

 shall be deemed to be timely filed if they are filed in the
 Office of Administrative Hearings before the close of
 business on July 31st, 2020, notwithstanding the time or
 period of limitation established by N.C.G.S. § 150B-23(f) or
 by any other statute.

¶ 36 Because the OAH Order only extended filing deadlines for contested cases

 before the OAH, the order cannot be applied to extend the filing deadline for the

 Taxpayers’ appeals in this case. See N.C. Gen. Stat. § 150B‑23(f) (granting the Chief

 Administrative Law Judge authority to issue an emergency extension, such as the

 OAH Order, only for the filing of contested cases).

 III. Conclusion

¶ 37 For the foregoing reasons, we affirm the Commission’s dismissal of the

 Taxpayers’ appeals because the notices of appeal were not timely filed, the

 Commission’s mailing procedure did not violate § 105-290(e), and the statutory 30-

 day deadline for filing was not extended by the NCSC or OAH Orders.

 AFFIRMED.

 Judges DIETZ and COLLINS concur.